THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL McKINLEY, Appellant.

Fourth Department, February 20, 1980

## APPEARANCES OF COUNSEL

*Nathaniel A. Barrell (Joseph Shifflett* of counsel), for appellant.

*Edward C. Cosgrove (Joseph Matteliano* of counsel), for respondent.

### OPINION OF THE COURT

MOULE, J.

On February 4, 1977 defendant's father requested that defendant cease living in the family home. Before leaving, defendant stated that he would get even and spat on his mother. A week later he returned and was given a key to the house by his parents, who were leaving to attend a swimming meet with defendant's brother. Upon the parents' return later in the evening, defendant was still present in the house eating sandwiches and watching television. At 11:00 P.M. defendant's father told him to leave and defendant responded that he did not have any money. When defendant's mother suggested that she could give defendant some money, defendant's father said that she could not and that they were no longer supporting defendant. At that point defendant lunged toward his parents and stabbed them with a knife which was concealed under his vest. Defendant stabbed his father to death and inflicted serious stab wounds on his mother. He then took money from his mother's purse and left. Upon his arrest the next morning at the University of Buffalo, defendant told the police, "It didn't turn out the way it was supposed to. It should have been me."

At his trial on charges of murder in the second degree, assault in the first degree and two counts of criminal possession of a weapon in the fourth degree, defendant asserted the defense of insanity. Four psychiatrists testified for the defense. Two testified that they had examined defendant after the crime and found him to be a paranoid schizophrenic who, at the time of the crime, could not appreciate the nature and consequences of his actions. A third testified that he had examined defendant several months prior to the crime, that he had diagnosed his condition as an early schizoid personality disorder, rather than a psychosis, and that he had ruled out a diagnosis of schizophrenia. This psychiatrist, because of his prior doctor-patient relationship with defendant, declined to examine him after the crime to determine if he was sane at the time of the crime. A fourth psychiatrist testified for the defense, but his testimony was stricken when it appeared that he did not know the proper standard for criminal responsibility in New York. In addition to the above the defense pre-

sented testimony of various other witnesses who had observed defendant's behavior prior to and after the crime. The prosecution presented testimony of two psychiatrists who examined defendant after the crime and determined that he was suffering from a schizoid personality disorder which was not a mental disease and which, in their opinion, did not prevent defendant from appreciating the nature and consequences of his actions.

Defendant was convicted by a jury of all charges and on appeal contends that four evidentiary rulings by the court were improper and denied him a fair trial.

Defendant's first contention is that the court improperly struck the testimony of a psychiatrist who examined him pursuant to a court order and who testified for the defense. The psychiatrist testified tht he examined defendant after the crime and concluded that defendant was "very likely—suffering from paranoid schizophrenia." Concerning the issue of defendant's criminal responsibility, the psychiatrist testified that, in his opinion, the defendant "was not able to conform his conduct to the requirements of law because of the intervening effects of mental disease." On cross-examination the doctor testified that when he examined the defendant, it was in reference to whether he was capable of conforming his conduct to the requirements of law. He further testified that he did not know the New York legal standard for criminal responsibility at the time he examined defendant and did not know it at trial. The court thereupon struck the doctor's testimony and instructed the jury to disregard it.

Section 30.05 of the Penal Law provides that a person is not criminally responsible for his conduct "if at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity to know or appreciate either: (a) The nature and consequence of such conduct; or (b) That such conduct was wrong."

Capacity to conform one's conduct to the requirements of law is part of the Federal standard for the insanity defense and was expressly rejected in early drafts of the New York Penal Law (see Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law, § 30.05, p 69). Accordingly, the psychiatrist's opinion testimony was properly stricken inasmuch as it was not rendered according to the New York standard for criminal responsibility.

Defendant asserts, however, that the psychiatrist's diagnosis

that he was suffering from paranoid schizophrenia should not have been stricken inasmuch as it was relevant to the jury's consideration of whether he was suffering from a mental disease or defect at the time of the crime. Evidence is relevant if it has a reasonable tendency in logic to make the proposition to be proved more likely or probable than it would be without the evidence (see *People v Davis,* 43 NY2d 17, 27, cert den 435 US 998; Richardson, Evidence [10th ed], § 146; McCormick, Evidence [2d ed], § 185). Inasmuch as the psychiatrist's testimony that defendant was suffering from paranoid schizophrenia would render a finding of lack of criminal responsibility more probable than it would be without such evidence, the doctor's diagnosis is technically, at least, relevant. However, technical relevance may be counterbalanced by other considerations which render the evidence inadmissible. Evidence may be rejected if its probative value is outweighed by the danger that its admission would confuse the main issue and mislead the jury *(People v Harris,* 209 NY 70, 82; Richardson, Evidence [10th ed], § 147, p 117; McCormick, Evidence [2d ed], § 185, pp 438-440).

The psychiatrist admitted that at the time he examined defendant he was under the impression that the purpose of his examination was to determine whether defendant was capable of conforming his conduct to the requirements of law, a standard different from the New York standard. The focus of the New York standard is not on whether defendant suffered from a mental disease or defect but, rather, its effect on the defendant's capacity to know or appreciate the nature and consequences of his conduct and "it is the defendant's power or capacity to know or appreciate about which the psychiatric witness actually testifies" (Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law, § 30.05, p 70).

Accordingly, it would have been difficult for the jury to know how much weight to give the doctor's diagnosis which was part of an examination admittedly conducted according to a standard for criminal responsibility different from New York law.

Moreover, the jury would be faced with serious problems in evaluating the doctor's diagnosis in conjunction with the testimony of the other psychiatric witnesses. Each of the other four psychiatrists who examined defendant after the crime was familiar with the proper legal standard and each testified

as to his diagnosis and as to how this diagnosis would, in his opinion, affect defendant's capacity to appreciate the nature and consequences of his actions. Had the court allowed the jury to consider the diagnosis portion of the stricken testimony, the jury would have been confused as to how to integrate it with the other psychiatric testimony.

■■ Accordingly, we believe that once it became apparent that the psychiatrist did not know the New York standard for criminal responsibility and had examined the defendant and formed an opinion under another standard, the court properly struck all of his testimony.

■ Moreover, even were we to decide that the diagnosis portion of the doctor's testimony was admissible, we would find that its exclusion was harmless error. The jury had before it the testimony of five other psychiatrists, three of them defendant's, as well as relevant portions of defendant's medical history and observations of his behavior by several witnesses who were not psychiatrists. Defendant was allowed full and fair opportunity to present his insanity defense. In addition, the other evidence pointing to defendant's guilt includes testimony that he threatened his parents a week before the murder; that he took money from his mother's purse after the killing; that he left the scene of the crime; and that he disposed of the murder weapon. Finally, upon arrest, defendant made damaging admissions to the police. Accordingly, there is no significant probability that the jury would have acquitted the defendant had it not been for the error *(People v Crimmins,* 36 NY2d 230).

Defendant's second contention is that the court erred in refusing to allow into evidence certain testimony of the therapist who dealt with defendant during the period of time that he was confined in the Erie County Holding Center after the crime. Specifically, he contends that the court refused to permit her to testify concerning observations which she made of the defendant, conversations that she had with him, and her opinions on his mental condition.

■ There is no support in the record for defendant's assertion that the therapist was not allowed to testify concerning her observations of defendant. Indeed, the court specifically stated that the therapist could testify as to her observations and thereafter sustained objections only to testimony where the witness mixed conclusions with her observations.

Concerning the therapist's testimony regarding defendant's

statements to her, such statements were properly excluded as hearsay. In addition, most of these statements, contained in the therapist's records, were quoted by defense counsel during cross-examination of the prosecution psychiatrists.

Finally, defendant's contention that the therapist, a psychiatric social worker, should have qualified as an expert witness and should have been allowed to render an expert opinion concerning defendant's sanity is without merit inasmuch as defendant's counsel never attempted to qualify the therapist as an expert. An expert "should be possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the information imparted or the opinion rendered is reliable" (McCormick, Evidence [2d ed], § 13; see, generally, § 10; Wigmore, Evidence [Chadbourn rev], vol 2, §§ 555-567; vol 7, §§ 1917-1929; Richardson, Evidence [10th ed], §§ 366-368; *Matott v Ward,* 48 NY2d 455, 459).

■ ■ Defendant also contends that the court erred in excluding from evidence the forensic mental health file that had been kept with respect to defendant after his arrest. Defendant's contention deals mainly with the notes kept by the therapist which contain the statements made by defendant and conclusions and opinions of the therapist. That portion of the records containing defendant's statements might have been admissible to establish merely that the statements were made (see *Hayes v State of New York,* 50 AD2d 693, 693-694, affd 40 NY2d 1044); however, the record shows that the records in issue were never offered for any purpose other than to establish the truth of the statements contained in them and were thus properly excluded as hearsay. That portion of the records containing conclusions and opinions of the therapist were likewise properly excluded inasmuch as the therapist was never qualified as an expert.

Defendant's final contention is that the court erred in refusing to permit Dr. Spinks to testify concerning a diagnosis of defendant's mental condition which she had made in 1970 during a hospitalization of defendant or the records upon which the diagnosis was based. The diagnosis, however, was based wholly on information which had been obtained and recorded by medical students and residents and which Dr. Spinks had only reviewed. The diagnosis was based entirely on hearsay inasmuch as there was no showing that it was the regular course of the hospital's business to make such records (CPLR 4518, subd [a]) or that the records bore a certification

or authentication by the head of the hospital (CPLR 4518, subd [c]).

■ In addition the 1970 diagnosis of adolescent adjustment reaction was so far removed from the February, 1977 crime as to be virtually devoid of any probative significance *(Waterman v Whitney,* 11 NY 157). Therefore, the court properly excluded the diagnosis and the records upon which it was based.

Accordingly, the judgment should be affirmed.

SIMONS, J. P., SCHNEPP, CALLAHAN and WITMER, JJ., concur.

Judgment unanimously affirmed.