THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WYLEY GATES, Appellant.

Third Department, December 28, 1989

## APPEARANCES OF COUNSEL

*Charles J. Wilcox* for appellant.

*Robert C. Hunter* for respondent.

## OPINION OF THE COURT

WEISS, J.

At about 11:00 P.M. on December 13, 1986, defendant, who was then 17 years old, told his grandmother that he found his father, the father's girlfriend, his three-year-old cousin and his brother all dead from multiple gunshot wounds in his home. Two Columbia County Deputy Sheriffs responded to the grandmother's telephone call and interviewed defendant at her house before entering defendant's home. He gave a five-page written statement in which he related going to the movies in the Town of Chatham with Damian Rossney after dinner and the discovery of the four bodies upon his return home. After agreeing to a polygraph examination, he was given *Miranda* warnings, patted down and driven in a police car to the Chatham police station. The grandmother contacted her family attorney, Richard Hogle, who was an Assistant County Attorney, and he agreed to temporarily represent defendant. After speaking to defendant at the Chatham police station, Hogle consented to the polygraph exam and accompanied defendant and a police officer to the State Police barracks in Dutchess County for the examination.

Following their arrival at the State Police barracks at about 6:30 A.M., defendant and Hogle were left alone for approximately 30 to 40 minutes, during which they examined written documents explaining the polygraph examination while the Deputy Sheriff briefed State Police Investigator Thomas Salmon on the events. After defendant signed a consent form, he accompanied Salmon to the examination room where *Miranda* warnings were again read and the polygraph machine was explained to him. Hogle remained in the waiting room without making any attempt to see or speak with defendant. In the meantime, during the preparatory and calibration procedures but before the actual test commenced, defendant confessed to shooting the four individuals and was placed under arrest. He was subsequently indicted on eight counts of murder in the second degree, one count of conspiracy in the second degree and one count of criminal possession of a weapon in the second degree. While in the Columbia County Jail awaiting trial, defendant allegedly made inculpatory statements to a cellmate, Charles Argyle, who related the statements to a Deputy Sheriff and to the District Attorney's office. Defendant's motion to suppress the verbal confessions made to Salmon and the statements allegedly made to Argyle were denied following hearings. After a jury trial, defendant was convicted of only the conspiracy count and sentenced to 8⅓ to 25 years' imprisonment.

On this appeal, defendant first contends that his confession to Salmon at the State Police barracks should have been suppressed because it was taken in contravention of his right to counsel and was not proven to have been made voluntarily. It is well-established law in this State that a defendant in custody who is represented by counsel on a pending charge may not be questioned about that charge in the absence of counsel unless an affirmative waiver of that right has been made in the presence of the attorney *(People v Hobson,* 39 NY2d 479). Nor may such a defendant be questioned about unrelated criminality if the police are aware he is represented by counsel *(People v Rogers,* 48 NY2d 167). Finally, a defendant may not be questioned if the police know that he has counsel on an unrelated charge *(People v Smith,* 54 NY2d 954). It is clear that noncustodial interrogation on a matter under investigation is proscribed if a suspect has retained counsel specifically on that matter and counsel instructed that there could be no questions in counsel's absence *(People v Skinner,* 52 NY2d 24). These rules were designed to prevent

the police from rendering the right to counsel ineffective by questioning a defendant about matters relating to the subject of the representation in the absence of counsel retained on the matter *(People v Bell,* 73 NY2d 153, 160).

There was no question that the police knew that defendant was represented by counsel, for Hogle had been physically present in both the Chatham police station and the State Police barracks and was in the waiting room of the barracks during the polygraph examination and concomitant questioning on the very matter under investigation. There similarly is no question that defendant's consent to the polygraph test was given after consultation with his attorney. It is equally undisputed that although Hogle did not accompany defendant into the polygraph room, he neither protested about his exclusion nor refused to permit defendant to proceed in his absence. Finally, defendant was repeatedly told that he could have his attorney present and could stop the procedure at any time and leave. The People contend that there was a counseled waiver explicitly made and that defendant proceeded with the examination knowingly and voluntarily without counsel at his side.

In *People v Beam* (57 NY2d 241, 254), the Court of Appeals held that: "there are occasions when the best counsel will lead a suspect to waive one of his rights. * * * When a person has had the benefit of counsel and then chooses to waive one of his rights, the police are not required to question the validity of that decision as long as they are assured that the decision was made in consultation with the suspect's attorney. *(People v Cunningham,* 49 NY2d 203; *People v Bartolomeo,* 53 NY2d 225.)*" Similarly, the Second Department in *People v Drelich* (123 AD2d 441) held that statements made by a defendant after the police have obtained permission to question him from his counsel in a telephone call were not violative of the rule in *People v Skinner (supra).* We find little distinction in the instant case.

Anticipating the prosecution would argue that both defendant and his attorney made a valid waiver of defendant's right to counsel during the polygraph examination, defendant contends that the polygraph test was never actually conducted and that the inculpatory statements made were the product of subtle interrogation. Defendant further argues that even if he validly waived the presence of his counsel during the polygraph examination, that waiver did not contemplate questioning of defendant by Salmon beyond the scope of the polygraph

questions. We disagree. The polygraph procedure necessarily included a pretest interview. The characterization of this phase as an interrogation distinct from the explicit polygraph examination has no basis in fact. The literature provided to defendant and his attorney explained that there would be a discussion concerning formulation of the questions. A sample examination was described as being 1 to 1½ hours long, including the pretest interview and several three-minute polygraph tests, and that the procedure could be longer or shorter.

The burden of persuasion on a suppression motion rests with the defendant after the People, in the first instance, establish the legality of the police conduct and the defendant's waiver *(People v Love,* 85 AD2d 799, *affd* 57 NY2d 998). Here, the prosecution established that defendant made a valid waiver in the presence of his attorney and that his subsequent conduct substantiated this waiver. Defendant was not in custody and his attorney was present in the waiting room. The proof showed that the preliminary discussion and pretest interview were commenced in accordance with accepted standards and within the scope of defendant's explicit written consent. Defendant was repeatedly advised that he could terminate the procedure at any time, could consult his attorney at any time, and should not proceed if he was not going to tell the truth or if he had criminal knowledge of the crime. Just as the preliminary phase was concluding defendant confessed, and as soon as he indicated that he wanted to consult his counsel the procedures were suspended. Salmon informed Hogle of defendant's concerns, the status of the procedure and of defendant's confession. The attorney then terminated the examination and, thereafter, defendant was arrested. The voluntariness of the incomplete polygraph examination and consent to participate outside the immediate presence of the attorney was established, as required by law, beyond a reasonable doubt *(cf., People v Valerius,* 31 NY2d 51; *People v Huntley,* 15 NY2d 72, 78).

Unlike *People v Tillman* (52 NY2d 1019), where the counseled consent occurred several days prior to the examination and there was no indication that the defendant agreed to proceed in the absence of his counsel, the consent here specifically contemplated that Hogle would not be in the polygraph room and further contemplated the preliminary discussion and a pretest interview. The situation here is similarly distinct from *People v Campbell* (28 AD2d 735), where the defendant was interrogated after the consensual test was completed

and counsel was not present. Under the totality of the circumstances shown in this record, we find that the People proved beyond a reasonable doubt that defendant's will was not overborne and his capacity for self-determination was not impaired either prior to or during the procedure (cf., People v Anderson, 42 NY2d 35). We find that there was no compulsion either to take the examination or to continue it once the procedures were begun. While defendant had been awake throughout the night, he had several extended private consultations with his attorney and at times was given food and drink. His speech was clear and coherent and he exhibited no sign of erratic behavior. During the car ride of approximately 50 miles to the polygraph location, the conversation between defendant, his attorney and the officer in the vehicle was cordial and on topics quite unrelated to the homicides. As previously stated, defendant gave no indication that he desired to terminate the examination or consult his attorney at any time before he confessed. In sum, we find that County Court's decision to deny suppression of the confession was proper.

■ Defendant further contends that admissions and statements made to his jail cellmate after his arrest should have been suppressed. There is no substantiation for the contention that the cellmate acted as an agent for the Sheriff or the District Attorney. The cellmate's contact with the investigator and prosecutor was totally unsolicited and without promises or inducements. The prosecution was the passive recipient of information. Simply stated, the informer was not an agent of the government (see, People v Cardona, 41 NY2d 333, 335; People v Farley, 120 AD2d 761), but rather an individual acting privately (see, People v Velasquez, 68 NY2d 533). We agree with the determination by County Court that the inculpatory statements made by defendant while in jail to Argyle did not require suppression.

■ We similarly turn away as unpersuasive defendant's final contention that County Court erred in excluding from evidence a drawing depicting the scene of the crime which had been found at the local high school. Defendant argues that it was exculpatory by suggesting that another individual had criminal knowledge of the homicides. The drawing was found two days after the murders and after extensive media coverage of the facts underlying the crimes. Moreover, after a copy of the diagram was published in the newspaper, the individual who had drawn it immediately contacted authori-

ties and explained its origins. Technical relevance may be weighed against considerations which render evidence inadmissible. Rejection is proper if the probative value of the evidence is outweighed by the danger that its admission would confuse the main issues and mislead the jury *(People v McKinley,* 72 AD2d 470, 474). Determinations of relevance and remoteness of evidence are properly within the discretion of the trial court *(People v Ahearn,* 88 AD2d 691). Here, County Court appropriately applied its discretion to a remote piece of evidence which was of limited relevance even if its origin had not been explained *(see, People v Donnelly,* 103 AD2d 941).

MAHONEY, P. J., MIKOLL, LEVINE and MERCURE, JJ., concur.

Judgment affirmed.