People v Williams
2026 NY Slip Op 04095
June 26, 2026
Appellate Division, Fourth Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
KEITH J. WILLIAMS, DEFENDANT-APPELLANT.

Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department
Decided on June 26, 2026
449 KA 22-01414
Present: Curran, J.P., Bannister, Montour, Greenwood, And Hannah, JJ.

CRIMINAL APPEALS ADVOCATES P.C., NEW YORK CITY (GREGORY SALMON OF COUNSEL), FOR DEFENDANT-APPELLANT.
BRIAN P. GREEN, DISTRICT ATTORNEY, ROCHESTER (LISA GRAY OF COUNSEL), FOR RESPONDENT.

Appeal from a judgment of the Supreme Court, Monroe County (Alex R. Renzi, J.), rendered June 8, 2022. The judgment convicted defendant upon a jury verdict of attempted aggravated murder, attempted murder in the second degree, aggravated assault upon a police officer or a peace officer and assault in the first degree.
[*1]
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law and a new trial is granted.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of attempted aggravated murder (Penal Law
§§ 110.00, 125.26 [1] [a] [i]; [b]), attempted murder in the second degree (§§ 110.00, 125.25 [1]), aggravated assault upon a police officer or a peace officer (§ 120.11), and assault in the first degree (§ 120.10 [1]). The conviction arises from an incident in which defendant's grandmother called 911 to have defendant removed from a residence and taken to the hospital due to his abnormal behavior and mental health concerns. The responding police officer initially coaxed defendant out from underneath a bed in the home, but defendant subsequently attacked the officer without warning, repeatedly punching and stabbing him with a knife and causing severe injuries, including permanent loss of vision.
We reject defendant's contention that Supreme Court erred in determining after a hearing that defendant was not an incapacitated person (see CPL 730.10 [1]). The record establishes that the court properly determined that the People met their burden of establishing by a preponderance of the evidence that defendant possessed the capacity to understand the nature of the proceedings against him and that he was capable of assisting in his own defense (see People v Mendez, 1 NY3d 15, 19-20 [2003]; People v Wright, 107 AD3d 1398, 1399 [4th Dept 2013], lv denied 23 NY3d 1026 [2014]). Defendant failed to preserve for our review his related contentions that the court, through its questioning of defendant's witness at the hearing, exceeded its role as a neutral arbiter and became an advocate for the People (see People v Charleston, 56 NY2d 886, 887 [1982]; People v Valle, 70 AD3d 1386, 1387 [4th Dept 2010], lv denied 15 NY3d 758 [2010]) and that the court exhibited bias and a predisposition to find him competent to stand trial (see People v Prado, 4 NY3d 725, 726 [2004], rearg denied 4 NY3d 795 [2005]; People v Tricic, 34 AD3d 1319, 1320 [4th Dept 2006], lv denied 8 NY3d 850 [2007]). In any event, those contentions lack merit (see Valle, 70 AD3d at 1387; Tricic, 34 AD3d at 1320).
Defendant further contends that the court committed reversible error by granting the People's pretrial motion to preclude the testimony of defendant's proposed psychiatric witness, asserting that the ruling constituted a violation of defendant's constitutional rights to present a defense and to due process. We agree.
By way of background, it is undisputed that defendant provided the People with timely and sufficient notice pursuant to CPL 250.10 of his intent to offer psychiatric evidence of a mental disease or defect in connection with the affirmative defense of lack of criminal responsibility by reason of mental disease or defect (see Penal Law
§ 40.15). In response, the People made a motion in limine to preclude the testimony of defendant's proposed witness, a psychiatrist who treated defendant during a restoration of competency admission approximately 1½ years after the underlying criminal incident and diagnosed him with "bipolar disorder, type 1, most recent episode
. . . manic with psychotic features." The People argued that the psychiatrist's post-crime diagnosis of defendant was irrelevant to the affirmative defense because the psychiatrist could not testify to defendant's mental disease or defect or state of mind at the time of the crimes. Defense counsel countered that the psychiatrist would not offer an opinion on the ultimate question of whether defendant met the legal standard on the affirmative defense. Rather, the psychiatrist would testify to the mental disease or defect element of that defense, specifically that, based on, among other things, the psychiatrist's post-crime observations of defendant and his review of medical records predating the crimes, defendant suffered from bipolar disorder. Defense counsel argued that defendant was entitled to present evidence that he had been diagnosed with a mental disease or defect and that it was ultimately for the jury, taking into account the psychiatrist's testimony and other evidence in the case, to infer if it so chose that defendant was suffering from a mental disease or defect at the time of the crimes that made him unable to appreciate the nature and consequences of his actions. After the court initially vacillated between suggesting both that it was inclined to deny and to grant preclusion of the psychiatrist's testimony, it determined that defendant would be required to make an offer of proof.
During the offer of proof, the psychiatrist testified about his diagnosis of defendant, which was based on his observations of defendant and his review of medical records of treatment that occurred not long before the incident. The psychiatrist also described the characteristics and manifestations of bipolar disorder. The psychiatrist further testified that, during a mental health admission prior to the incident, defendant had exhibited behavioral problems that were similar to those observed by the psychiatrist and noted that such prior behavior played a role in the psychiatrist's diagnosis of defendant. The psychiatrist nonetheless acknowledged that he had not evaluated defendant in order to form an opinion about whether defendant met the legal standard for the subject affirmative defense and that he could not say what defendant's diagnosis was on the date of the incident. The psychiatrist further testified, among other things, that bipolar disorder can develop over a course of years before it is diagnosed and that because bipolar disorder is a cyclical disease, there are times when people with that disorder are asymptomatic.
Defense counsel, citing applicable case law and distinguishing case law relied on by the People, urged the court to deny the People's motion to preclude the psychiatrist's testimony, pointing out in particular that preclusion would constitute reversible error inasmuch as it would deprive defendant of any means to present his affirmative defense and would thus violate his constitutional rights to present a defense and to due process. The court credited the psychiatrist's testimony with respect to the diagnosis and the similarities between the features of defendant's pre-crime mental health admission and the post-crime observations of the psychiatrist. Nevertheless, the court concluded that the psychiatrist's post-crime diagnosis was "not relevant" to whether defendant had a mental disease or defect at the time of the crimes approximately 1½ years earlier. The court additionally reasoned that the psychiatrist's testimony about his diagnosis of defendant would lead the jury to speculate about defendant's condition at the time of the crimes. The court thus granted the People's motion to preclude the prospective testimony of the psychiatrist and noted defense counsel's exception to the ruling for the record.
"Criminal defendants must be afforded a meaningful opportunity to present a complete defense" (People v Deverow, 38 NY3d 157, 164 [2022] [internal quotation marks omitted]; see Crane v Kentucky, 476 US 683, 690 [1986]). "That right, which encompasses the right to offer the testimony of witnesses, is 'a fundamental element of due process of law' " (People v Dixon, 42 NY3d 609, 616 [2024], cert denied — US —, 145 S Ct 1460 [2025], quoting Washington v Texas, 388 US 14, 19 [1967]; see People v Sidbury, 42 NY3d 497, 507 [2024]; Deverow, 38 NY3d at 164; see generally US Const Sixth, Fourteenth Amends). "Although th[e] right to present a defense does not give criminal defendants carte blanche to circumvent the rules of [*2]evidence . . . , a trial court must not apply the rules mechanistically to defeat the ends of justice" (Deverow, 38 NY3d at 164 [internal quotation marks omitted]; see Chambers v Mississippi, 410 US 284, 302 [1973]). Thus, " '[a] court's discretion in evidentiary rulings is circumscribed by' the defendant's constitutional right to present a defense" (Deverow, 38 NY3d at 164, quoting People v Carroll, 95 NY2d 375, 385 [2000]). Indeed, "[w]hile a defendant's right to call witnesses on [their] behalf is not absolute, a state's interest in restricting who may be called will be scrutinized closely where maximum truth gathering, rather than arbitrary limitation, is the favored goal" (Sidbury, 42 NY3d at 507 [internal quotation marks omitted]).
Defendant sought to advance at trial the affirmative defense of lack of criminal responsibility by reason of mental disease or defect (Penal Law § 40.15). A defendant will be absolved of criminal liability pursuant to that affirmative defense if, "at the time of [the criminal] conduct, as a result of mental disease or defect, [the defendant] lacked substantial capacity to know or appreciate either . . . [t]he nature and consequences of such conduct[ ] or . . . [t]hat such conduct was wrong" (id.; see People v Hills, 243 AD3d 1241, 1241 [4th Dept 2025]). "While the People are required to prove the elements of the charged crimes beyond a reasonable doubt, the defendant has the burden of proving the elements of the affirmative defense by a preponderance of the evidence" (Hills, 243 AD3d at 1241; see § 25.00 [2]; People v Kohl, 72 NY2d 191, 193-194 [1988]). "When there is conflicting expert evidence on the issue of criminal responsibility, the jury is generally free to accept or reject, in whole or in part, the opinion of any expert, at least in the absence of a serious flaw in the expert's testimony" (People v Gillie, 185 AD3d 1539, 1540 [4th Dept 2020], lv denied 35 NY3d 1094 [2020] [internal quotation marks omitted]; see Hills, 243 AD3d at 1241-1242).
We agree with defendant that the court abused its discretion by granting the People's motion to preclude defendant from calling his proposed psychiatric witness at trial on the ground that the psychiatrist's prospective testimony was not relevant (see People v Osman, 213 AD3d 1256, 1257 [4th Dept 2023]; People v Morales, 125 AD2d 605, 606 [2d Dept 1986], lv denied 70 NY2d 651 [1987]). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" (People v Davis, 43 NY2d 17, 27 [1977], cert denied 435 US 998 [1978] [internal quotation marks omitted]; see Morales, 125 AD2d at 607).
Here, the court erred in its primary determination—which the People notably do not defend on appeal—that the psychiatrist's prospective testimony was not relevant. We conclude that "[i]nasmuch as the psychiatrist's [prospective] testimony that defendant was suffering from [bipolar disorder, type 1, most recent episode manic with psychotic features] would render a finding of lack of criminal responsibility more probable than it would be without such evidence, the [psychiatrist's] diagnosis [was] . . . relevant" (People v McKinley, 72 AD2d 470, 474 [4th Dept 1980]). More particularly, although the psychiatrist did not treat, observe, and diagnose defendant until approximately 1½ years after the incident, the psychiatrist's diagnosis was not based solely on his observations; rather, it was based on a comprehensive review of defendant's medical history, including a prior mental health admission that occurred not long before the crimes and during which defendant exhibited behavioral problems similar to those observed by the psychiatrist. The psychiatrist specified that defendant's past medical records and behaviors all played a role in his diagnosis of defendant. It is true, as defense counsel acknowledged and the court recognized, that the psychiatrist's prospective testimony would not include "any [overall] opinion [whether] . . . defendant was, at the time of the crime[s], suffering from a mental disease or defect which caused him to lack substantial capacity to know or appreciate the nature and consequence or the wrongfulness of his conduct" (Morales, 125 AD2d at 607). However, even in the absence of an opinion on the affirmative defense as a whole, we conclude that "the prospective testimony was, in general terms, relevant to the material issue of . . . defendant's [mental disease or defect]" at the time of the crimes (id.).
We also agree with defendant that, contrary to the People's assertion, the court abused its discretion in further determining that the psychiatrist's testimony about his diagnosis of defendant would lead the jury to speculate about defendant's condition at the time of the crimes. Even relevant evidence "may be [excluded] if its probative value is outweighed by the danger that its admission would confuse the main issue and mislead the jury" (McKinley, 72 AD2d at 474; see People v Cerda, 40 NY3d 369, 377 [2023]). Here, although the psychiatrist did not [*3]evaluate defendant prior to the crimes and thus could not render a medical opinion that defendant had bipolar disorder on the date of the crimes, "there were indications in [his] testimony that the mental disease from which defendant was suffering could take [years] to develop [before diagnosis] and [that] . . . the [prior medical] records . . . suggest[ed] the existence of some mental disorder a considerable time before the crime[s]" (People v Brown, 19 AD2d 599, 599 [1st Dept 1963]). Consequently, the record does not support the court's determination that the jury would be misled or called on to speculate. Instead, as defense counsel argued before the court, defendant, in seeking to establish his affirmative defense, would merely ask the jury to infer from all the available evidence—including his medical evaluations both before and after the incident and his behavior during it—that, at the time of the crimes, he was suffering from a manic and psychotic episode of his subsequently diagnosed mental disease or defect. Rather than precluding the jury from hearing the psychiatrist's testimony, the court "should have . . . permitted [the psychiatrist] to testify, subject to the . . . court's right to rule on the propriety of particular answers upon proper objection" (Morales, 125 AD2d at 607; cf. McKinley, 72 AD2d at 472-474), and the weight to be afforded to his testimony and the rational inferences to be drawn therefrom "ought to have been left open to the jury's resolution" (Brown, 19 AD2d at 599).
Finally, we conclude that the error is not harmless (see Osman, 213 AD3d at 1257; see generally People v Crimmins, 36 NY2d 230, 237 [1975]; People v Irizarry, 248 AD2d 928, 929 [4th Dept 1998], lv denied 92 NY2d 853 [1998]). The preclusion of the psychiatrist's testimony effectively prevented defendant from mounting his affirmative defense (see Penal Law § 40.15) and severely undermined his ability to separately argue that he lacked the requisite mental state to commit the charged offenses (see generally People v Segal, 54 NY2d 58, 66 [1981]). Inasmuch as " 'it cannot be said that there is no reasonable possibility that the error contributed to the verdict, the error cannot be deemed harmless beyond a reasonable doubt and reversal therefore is required' " (People v Vo, 166 AD3d 1587, 1588 [4th Dept 2018]; see Deverow, 38 NY3d at 168).
Entered: June 26, 2026
Ann Dillon Flynn
Clerk of the Court