Otto C. Jaeger, S.
This is a compulsory accounting proceeding. The decedent died intestate, survived only by his widow and their adult son. The widow is the administratrix and moves to dismiss her son’s petition to compel her to account, on the grounds that the son lacks status as a distributee by having renounced his intestate share; that the court is therefore without jurisdiction over this proceeding and that the son is *640 estopped from bringing the proceeding. The widow also seeks alternative relief to permit her to file nunc pro tunc an acknowledgment of the written renunciation signed by the son on October 21, 1970 and filed in this court on November 17, 1970. This renunciation was signed before a notary but does not bear the usual form of acknowledgment. Rather it carries the jurat “ Sworn to before me this 21st day of October 1970 ” and is signed by the notary public who affixed his notarial stamp beneath his signature. There is no dispute as to the son’s having signed the renunciation.
The son opposes the motion to dismiss his petition and in essence seeks a determination that his renunciation of October 21, 1970 and a subsequent order dated November 6, 1970 which the son obtained from this court on his own petition and which extended his time to file and serve the renunciation, are a nullity.
The sequence of events leading to the present controversy is as follows: decedent died on July 25,1969; the widow qualified as administratrix and letters were issued to her on December 1, 1969. Then on October 21, 1970 the son went with his mother to the office of the attorneys for the estate and signed a renunciation of his intestate share together with the petition to this court requesting an order to extend his time to file and serve the renunciation. Notice to the widow was accomplished by having her indorse on the originals acknowledgments of receipt of copies of the petition and the renunciation.
It was necessary for the son to ask for the extension because EPTL 4-1.3 (subd. [a]) requires, among other things, that the renunciation be filed and served within six months after issuance of letters of administration. Here the time had expired on June 1, 1970, However, the statute also authorizes the Surrogate in his discretion to extend the time to file and serve a renunciation and it was to this discretion that the son directed his request. Witness the son’s recitation of his plight as set forth in his petition: 61 That your Petitioner did not file and serve a renunciation of his distributive share within six months after letters of administration had been issued because although I had generally discussed the renunciation with the attorney for the estate * * * that because of his hospitalization on or about May 13, 1970 I did not have the opportunity to finalize the matter with him within the six month period of time required by the statute.” (In fact the attorney for the estate died in November, 1970.)
Further witness the reasons given for wishing to renounce: “ My reasons for renouncing are also based on personal reasons *641 due to the fact that my father on numerous occasions told me that he wished my mother to receive the entire benefits of the estate. I have been advised by my attorneys that if I do not renounce, I am entitled to approximately 50% of the net estate and I am fully aware that I will lose all rights under my father’s estate as a son pursuant to the laws of intestacy in New York State. Knowing full well the effect of my renunciation, I would still ask this Court to allow me to voluntarily accede to my father’s wishes even though he has not prepared a Will and in effect by renouncing cause my mother to be the sole beneficiary as he would have desired had he drawn a Will.”
On November 6, 1970 the court exercised its discretion and granted the son’s request by signing an order which extended his time to file and serve a renunciation nunc pro tunc for a period of six months from May 30, 1970. The renunciation, in the form above described, was then filed in this court on November 17, 1970 with the widow’s acknowledgment of receipt of a copy indorsed on the back.
Thereafter the estate was administered on the basis that the widow was the sole distributee (the son having no issue at the time he renounced), the estate tax returns were filed, an audit held and the taxes fixed and paid. The estate is substantial and consists of a business and real and personal property. Finally it came time to make final distribution and to close the estate. It was then that the validity of the son’s renunciation was challenged. On May 14, 1973 the son filed the present petition to compel his mother to account. The widow informs the court that she “ can furnish no explanation * * * as to why this proceeding was commenced by her son. ’ ’ The court is similarly perplexed since the son himself declares: “ I have always intended to renounce my intestate share and still would like to renounce pursuant to EPTL 4-1.3 if this is legally possible. (It is my position that it is not legally possible). When I signed the alleged renunciation on October 21, 1970, I thought that the renunciation had been properly executed and I had no reason to believe otherwise. It was not until April 27,1973, when I was so advised-by my present attorney, that I became aware of the fact that the renunciation was improperly executed.” The attorney referred to happens to be the son’s wife to whom he was married just shy of three weeks before he signed the renunciation. In fact, it was the day after his return from his honeymoon that the son signed the renunciation, and, as his attorney wife herself complains: ‘‘ It should also be noted that I was not aware of the fact that the petitioner [son] was going *642 to [the attorney’s] office on October 21, 1970 to execute a renunciation.”
For whatever may be the reasons, it is now urged on behalf of the son that his renunciation is void because the court did not have power to grant his request for an extension after the expiration of six months from the date of issuance of letters and further because the renunciation itself was not properly ¡acknowledged.
The court does not agree with the interpretation of EPTL 4— 1.3 (subd. [a]) urged by the son’s attorney wife. Nowhere does the statute state that the application for an extension must be made within the six-month period. The pertinent language is: “ The time to file and serve a renunciation may be extended, in the discretion of the surrogate, on a petition showing reasonable cause and on notice to such persons and in such manner as the surrogate may direct.”
The son’s present attorney challenges the propriety of the phrase nunc pro tunc in the order even though it was the son’s former attorney who drafted and submitted the order with those words. However, the fact is that the extension did not have to be granted nunc pro tunc since there is no requirement that the application to extend must be made within the six-month period. If the court were without power to grant the extension at the time it did, then obviously the words nunc pro tunc could not furnish the power. It appears to the court that the son is confusing the provisions of the right of election statute (EPTL 5- 1.1, subd. [e], par. [1]) and the election against excessive gifts to charities statute (EPTL 5-3.3, subd. [a], par. [5]) on the one hand with the provisions of the “renunciation statutes (EPTL 4-1.3, subd. [a]) and (EPTL 3-3.10, subd. [a]) on the other. Under the former there is no question that the application for an extension must be made prior to the expiration of the time specified for making the election. Those statutes say so: “ The time to make such election may be extended before its expiration ”. (Emphasis supplied.) Moreover, they contain specific provisions to relieve from default which is understandable in light of the strict limitation compelling one to apply before the expiration of the time period. The reason for the difference in the wording of those statutes in contrast to the renunciation statutes is apparent from their subject matter — in the cases of the spouse’s right of election and the election against an excess gift to charity, the person electing is attempting to acquire something, namely an interest which he would not otherwise have, whereas under the renunciation statutes *643 just the opposite effect is sought to be accomplished, i.e.s a person is surrendering something, which presumably will confer a benefit upon someone else. Obviously a stricter limitation is appropriate in the former cases than in the latter.
There is little decisional law construing EPTL 4-1.3 (subd. [a]) since its enactment in 1966. The son’s attorney has cited Matter of Tesser (N. Y. L. J., Feb. 16, 1967, p. 18, col. 4, adhered to on rearg. N. Y. L. J., March 14, 1967, p. 18, col. 3) which is at variance with this decision. However, it cannot be determined from reading that case whether any reasonable cause existed to warrant granting the relief requested. Here ample cause did exist for the court to exercise its discretion to relieve,the son’s predicament as he prayed this court to do. To the extent that the Tesser case may hold that no extension may be given after the six-month period has expired under any circumstances, then this court must respectfully disagree. Accordingly the court determines that its order of November 6,1970 was proper.
It next becomes necessary for the court to pass upon the second argument presented by the son, i.e., that the renunciation is invalid because it did not bear an acknowledgment.
Unquestionably the language of the statute (EPTL 4 — 1.3, subd. [a]) is that a renunciation shall be in writing, signed and “ acknowledged ” by the person renouncing. The question, therefore, is whether the son’s failure to properly acknowledge the renunciation is fatal or can be cured.
There is abundant authority for curing this mistake. Missing acknowledgments have been supplied by the taking in court of the acknowledgment of a person who witnessed a party execute an instrument (Matter of Maul, 176 Misc. 170, affd. 262 App. Div. 941, affd. 287 N. Y. 694; Matter of Stegman, 42 Misc 2d 273) and also the acknowledgment of the party himself to the instrument (Matter of Sommers, 200 Misc. 1013). Those cases involved notices of» election and if the courts deemed it appropriate to permit the curing of defective acknowledgments there, then certainly the court should for the reasons discussed previously, permit it in a renunciation case. Accordingly the son is directed to appear in the courtroom of this court on November 7, 1973 at 9:30 a.m. to afford him an opportunity to acknowledge to the court execution of the renunciation (Real Property Law, § 298, subd. 2), and this proceeding is restored to the general calendar of that date for such purpose. If the son fails to appear on the above date at the time specified, then the court will be available to take the acknowledgment of the notary public (who is a member of the firm of attorneys representing *644 the mother) as a subscribing witness to the execution of the renunciation by the son (Real Property Law, § 304). Thereafter the court will render such supplemental decision as may be appropriate.