■ In the Matter of the Estate of LOUIS S. PALMERI, Deceased. JOHN A. PALMERI, Appellant; MARY T. PALMERI, Respondent.—In this proceeding pursuant to SCPA 2205 and 2206 to compel the respondent administratrix to render and settle her account, petitioner (the intestate's son) appeals from an order of the Surrogate's Court, Westchester County, dated December 21, 1973, which, *inter alia*, granted respondent's motion to dismiss the petition on the ground that petitioner lacks status to institute the proceeding. Order affirmed, without costs. In his brief appellant states: "Petitioner has always intended to renounce his intestate share and still would like to renounce pursuant to EPTL 4–1.3 if this is legally possible (it is his position that it is not legally possible)." We hold not only that it was legally possible for appellant to renounce but that he did so consistent with the policy reflected in subdivision (c) of section 25.2511-1 of the United States Gift Tax Regulations, which provides that a refusal to accept ownership of property transferred from a decedent does not constitute the making of a gift if the refusal is made within a reasonable time after acquiring knowledge of the existence of the transfer. Hopkins, Acting P. J., Latham, Shapiro and Brennan, JJ., concur; Munder, J., dissents and votes to reverse the order and deny respondent's motion, with the following memorandum: In my opinion, the renunciation by petitioner of his intestate share of his father's estate was ineffective, because it was not filed with the Surrogate within six months after the issuance of letters of administration. The statute governing renunciation of an intestate share (EPTL 4–1.3) must be strictly construed because it is in derogation of the common law. Historically, distributees were deemed to receive their statutory shares by operation of law and hence had no power to decide whether to accept or reject the shares. If in fact a distributee rejected his share, he was deemed to have received it and to have made a transfer of it to those who ultimately would receive it. For tax purposes, he was deemed a donor (see 9 Rohan, New York Civ. Prac., EPTL, § 4–1.3 [1], p. 4-59). In addition to the above, it is acknowledged that "renunciations are ordinarily motivated by a desire to frustrate creditors, the tax collector, or the Alien Property Custodian" (9 Rohan, op. cit. *supra*, § 4–1.3 [1], p. 4-60). In view of this background, a petition to the Surrogate to extend the time to renounce should be made without delay and I interpret that to be within the six-month period indicated by the Legislature (see *Matter of Tesser*, N. Y. L. J., Feb. 16, 1967, p. 18, col. 4). If the distributee for any reason cannot personally execute and file his renunciation within six months, a petition within that time seeking extension will at least give notice to interested persons that a renunciation is intended and will be forthcoming. This should produce the desirable effect of expediting the settlement of estates and estate taxes. I observe that the attorney representing the son, at the time he applied for an extension, apparently similarly interpreted the six-month requirement. The order which he prepared and which the Surrogate signed on November 6, 1970 (more than 11 months after letters of administration were issued) extended the time to file and serve "nunc pro tunc as of May 30, 1970 for a period of six months from May 30, 1970". There was no need for such a qualification if the six-month requirement can be disregarded in the Surrogate's discretion. It may be noted that drafters of model legislation on this subject of disclaimer indicate a preference for an absolute time restriction (e.g., 10 months) on the exercise of any right to renounce (3 Real Prop., Prob.

and Tr. J. 131). Without a time restriction, estates can drag on interminably. Distributees can always find "reasons" for their failure to act. Under the peculiar facts at bar there is considerable appeal in the argument that the son should be estopped from claiming the untimeliness of his own petition for leave to renounce. The son seeks now, after the estate taxes have been fixed and paid, to avoid what he himself originally sought. Moreover, he now says that he still wants to renounce. Thus, this is one of those difficult cases that make bad law. For the reasons above stated, I conclude that the son's renunciation was void because it was untimely and that the order dismissing this proceeding to compel an accounting for lack of standing should be reversed. In my view, the language of EPTL 4–1.3 (subd. [a]) which states that the renunciation of an intestate share "shall be filed * * * within six months after letters of administration have been issued" likewise applies to petitions seeking to extend that time in the discretion of the Surrogate. Either the renunciation must be properly executed and filed within six months after the issuance of letters or the petition to extend the time must be made within that time. For, as subdivision (a) also states, "the time limited in this section for filing and serving a renunciation is *exclusive*" [emphasis mine]. If there is to be additional erosion of the common-law treatment of renunciations by distributees it should be done by the Legislature and not by the courts. [75 Misc 2d 639.]