OPINION OF THE COURT
Lee L. Holzman, S.
Respondent, decedent’s brother, moved for summary judgment dismissing the petition in this proceeding to revoke the letters of administration that had issued to him. Petitioner cross-moved for summary judgment. She contends that she is decedent’s adopted daughter and his sole distributee. Petitioner concedes that, when she was an adult and while decedent was still alive, she was adopted for a second time by her *6 mother’s second husband in California. However, she asserts that the California adoption should not affect her status as decedent’s daughter because it would not have occurred but for her mother’s fraudulent representation to her that decedent was then dead.
Decedent died intestate on December 11, 1986. In respondent’s petition for letters of administration, he stated that decedent’s distributees are himself, a sister, and six nieces and nephews, children of predeceased siblings. Letters of administration issued to respondent on April 2, 1987.
Petitioner contends that she is decedent’s sole distributee, and, consequently, that the letters of administration were obtained by a false statement of a material fact and should be revoked (SCPA 711 [4]). In support of her application, petitioner details an exotic set of circumstances. Petitioner was born on December 19, 1946 in New York City. On July 6, 1948, at the age of approximately 1½ years, she was adopted by decedent and his then wife in this court. Shortly thereafter, the adoptive parents separated, and, on June 8, 1953, decedent’s wife was granted a divorce by the District Court of Nevada, County of Clark. Custody of petitioner was awarded to her mother. On the same date, petitioner’s mother married Alvise Anton Turrick. Subsequently, the mother, her spouse, and petitioner moved to California where they resided for a number of years. On October 26, 1970, pursuant to a decree of adoption issued by the Superior Court of California, County of Orange, petitioner, who was then 23 years of age, was adopted by Alvise Anton Turrick. The decree and the underlying agreement of adoption between petitioner and Mr. Turrick reflect that, apparently as a result of petitioner’s having attained her majority, the only parties whose consent to the application was required were the adoptive parent, his spouse and the adoptive child, i.e., petitioner.
After his separation from his wife and subsequent divorce, decedent remained a resident of Bronx County. The record indicates, without definitively establishing, that decedent may not have known the whereabouts of his ex-spouse and adopted daughter after his divorce, and that, over the course of the intervening years, contact between decedent and petitioner was severed due to the actions of petitioner’s mother. Petitioner takes the position that her mother had told her that her adoptive father was dead, and, further, that her consent to the adoption by the mother’s second husband was procured by this fraudulent misrepresentation. However, an examination *7 of the decree of adoption issued by the California court evinces no indication of such representation whatsoever but reflects merely the relatively straightforward adoption of one adult party by another to which, presumably, the consent of neither the natural nor prior adoptive parents of the child are necessary (cf, Domestic Relations Law § 111 [4]).
In any event, evidently through the efforts of decedent’s sister, a relationship between petitioner and decedent was resumed in approximately 1981 when the sister located petitioner in California. Petitioner alleges that decedent subsequently entered into a familial relationship with petitioner and her husband which continued until his death. Petitioner has submitted a copy of a change of beneficiary form on decedent’s life insurance policy in which he designated petitioner and her husband, who are therein denominated as his "daughter and son-in-law”, to be the beneficiaries of his life insurance policy. Copies of correspondence between herself and decedent submitted by petitioner also reflect the resumption of an apparent father-child relationship. This renewed relationship notwithstanding, however, decedent never executed a will naming petitioner as the beneficiary of his estate.
When the instant matter last appeared on the calendar, the parties were afforded the opportunity to submit additional papers or memoranda of law in support of their respective motions for summary judgment. However, both parties indicated that they wanted the applications to be determined upon the basis of the record as it presently stands.
In order for the court to grant summary judgment, it must clearly appear that no material triable issues of fact are present (Phillips v Kantor & Co., 31 NY2d 307; Glick & Dolleck v Tri-Pac Export Corp., 22 NY2d 439; DiMenna & Sons v City of New York, 301 NY 118). On a motion for summary judgment, the court’s function is that of issue finding rather than issue determination (Esteve v Abad, 271 App Div 725), and, if a factual issue exists, or if there be a significant doubt of its existence, or even if it be arguable, the motion must be denied (Phillips v Kantor & Co., supra).
It is incumbent upon a party seeking summary judgment to set forth sufficient evidence to demonstrate the absence of any material issues of fact, thereby establishing a prima facie entitlement to judgment as a matter of law (Alvarez v Prospect Hosp., 68 NY2d 320, 324). The other side of the coin is that, "Once this showing has been made, however, the burden *8 shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action” (Alvarez v Prospect Hosp., supra, at 324). The affidavit of an attorney, even absent personal knowledge of the facts, may be given weight in a summary judgment application if it is merely a vehicle for the submission of other material which constitutes evidentiary proof (Zuckerman v City of New York, 49 NY2d 557, 563). However, an affidavit by an attorney as to an event as to which he has no personal knowledge is devoid of evidentiary value and cannot afford a basis for either granting or denying a summary judgment application (Zuckerman v City of New York, supra).
In the case at bar, petitioner has failed to submit her own affidavit either in support of her motion for summary judgment or in opposition to respondent’s motion. Instead, she relies upon affidavits of her counsel which primarily consist of hearsay statements that presumably were made to him by petitioner. On this basis alone, the court would have to rule in respondent’s favor on both of the motions. Nevertheless, in order to obviate the necessity of a meaningless application to reopen the matter, the court shall consider whether a different result would be warranted in the event that petitioner filed her own affidavit setting forth all of the facts alleged in the affidavits of her counsel.
The law of the jurisdiction in which decedent was domiciled at the time of his death governs the descent and distribution of his estate (EPTL 3-5.1 [b] [2]; Matter of Rougeron, 17 NY2d 264, cert denied 385 US 899; Matter of Chase, 127 AD2d 415; Matter of Yuska, 128 Misc 2d 98). Specifically, section 117 (1) (b) and (c) of the Domestic Relations Law, which governs the inheritance rights of adoptive children, provides as follows:
"(b) The rights of an adoptive child to inheritance and succession from and through his natural parents shall terminate upon the making of the order of adoption except as hereinafter provided.
"(c) The adoptive parents or parent and the adoptive child shall sustain toward each other the legal relation of parent and child and shall have all the rights and be subject to all the duties of that relation including the rights of inheritance from and through each other and the natural and adopted kindred of the adoptive parents or parent.”
The exceptions referred to in paragraph (b) are set forth in *9 paragraphs (d) and (e) but do not pertain to the issues in the within proceeding.
As illustrated by the above statutory provisions, it is the clear public policy of this State that an adoptive child be placed for all purposes in his new family as irrevocably as if he had been born into it. In Matter of Best (66 NY2d 151, 155, cert denied sub nom. McCollum v Reid, 475 US 1083), the Court of Appeals stated that, in adopting these provisions of the Domestic Relations Law, "the Legislature clearly intended that the adopted child be severed from the [original] family tree and be engrafted upon new parentage”. The evident purpose of the above statutes was "to place the adopted child for inheritance purposes in the bloodstream of his new family just as a natural child, and sever insofar as possible all connection with the natural family” (Second Report of Temporary State Commn on Modernization, Revision and Simplification of Law of Estates, 1963 NY Legis Doc No. 19, at 25, 147, n). Accordingly, for all of the foregoing reasons, it is concluded that, upon her adoption by the second husband of her mother, petitioner lost her status as a distributee of decedent and all rights of intestate succession in his estate.
Nevertheless, petitioner seeks to avert the inevitable consequences of her adoption out of decedent’s family by mounting, in effect, a collateral attack on her adoption by her mother’s second husband in California. The allegations that petitioner’s mother lacked lawful custody of her at the time of the entry of the Nevada divorce decree and that decedent was completely unaware of petitioner’s whereabouts at the time of her adoption by her mother’s second husband are irrelevant to the issues in this case since, as noted above, petitioner was adopted by said second spouse at a time when she was an adult and it has not been established or even contended that decedent’s knowledge or consent to the adoption was required.
However, petitioner also argues that she should not be bound by the California adoption on the grounds that it had been procured by fraud. It is alleged that petitioner’s consent to the adoption was obtained by the purported representation by her mother that decedent was no longer living, a deception which continued for almost 11 years. The papers submitted do not indicate that such a representation was ever made to the California court. An examination of both the decree of adoption entered by the California court and the petition and agreement of adoption executed by petitioner and her mother’s second husband reflects no more than that petitioner, who *10 is explicitly recognized therein as an adult, knowingly and willingly desired to assume the legal relation of parent and child with her proposed adoptive father and to accept all of the duties and responsibilities of that relationship.
In any event, there are broad and fundamental grounds upon which petitioner’s collateral attack upon the California decree must fail. Pursuant to article IV, § 1 of the US Constitution, the courts of each State must accord full faith and credit to the determinations of the sister States (Williams v North Carolina [I], 317 US 287). The only basis upon which the judgment or decree of one of the States may be collaterally attacked in a sister State is lack of jurisdiction (Williams v North Carolina [II], 325 US 226). The obligation to establish said lack of jurisdiction is upon the party alleging same. "The burden of undermining the verity which the [foreign] decrees import rests heavily upon the assailant” (Williams v North Carolina [II] supra, at 233-234). If the court of the first State had jurisdiction, its judgment "is conclusive upon the merits in every other State” (Williams v North Carolina [II] supra, at 229).
In the instant case, although petitioner alleges that she was induced to agree to the adoption by her mother’s second husband upon the basis of fraudulent misrepresentations, she nowhere asserts, let alone establishes, that the California court lacked the jurisdiction to approve the adoption. As noted above, at the time of the entry of the California decree 'on October 26, 1970, both petitioner and her proposed ádoptive father were residents of that State. In addition, as petitioner was, at that time, an adult, the consent to the adoption by any additional parties, was presumably, not required. Petitioner has failed to show that she can present facts which would support a determination that the California court lacked jurisdiction to enter the decree of adoption. Accordingly, petitioner’s collateral attack upon said foreign decree must fail, and it must be accorded full faith and credit by this court. Moreover, when petitioner resumed her relationship with decedent, she failed during the ensuing lengthy period of time to take any action to either set aside the adoption by her mother’s second husband in California, or, in. the event that she wished to regain the status of a child of decedent, move in this or any other jurisdiction to be readopted by him. Pursuant to section 117 (1) (b) of the Domestic Relations Law, petitioner having been adopted out of decedent’s family, her rights to inheritance from and through decedent terminated *11 upon her adoption - by her mother’s second husband (see, Matter of Best, 66 NY2d 151, cert denied sub nom. McCollum v Reid, 475 US 1083, supra).
The foregoing is not to say that there is no equity in petitioner’s position that decedent, at least to some extent, still viewed her as his daughter, as is evidenced by his designation of her, in her capacity as his daughter, as a beneficiary of his insurance policy. However, it is equally evident that, just as he had designated petitioner as the beneficiary of his life insurance policy, he could have executed a will leaving all or any part of his estate to her. It is not for the court to speculate as to why this never occurred. In fact, were the court to speculate, it might as easily infer, with as much degree of certainty, that decedent designated petitioner as the beneficiary of his life insurance policy because she failed to apprise, him of her adoption by her mother’s second husband. In any event, the laws of intestacy were adopted by the Legislature precisely because it is not the function of the court to speculate as to how an individual would have liked to leave his property in the absence of a will.
Upon the basis of all of the foregoing, it is concluded that petitioner has failed to raise any issue of fact the resolution of which could result in a determination that she is a distributee of decedent. Accordingly, petitioner’s cross motion for summary judgment granting the application to revoke respondent’s letters of administration is denied, and respondent’s motion for summary judgment dismissing the petition is granted.