[651 NYS2d 440]

PATRICIA LANCASTER, as Administratrix of the Estate of JOSEPH R. CONDO, Deceased, Appellant, v 46 NYL PARTNERS et al., Respondents and Third-Party Plaintiffs. STANDARD ERECTORS, Third-Party Defendant-Respondent.

First Department, December 12, 1996

## APPEARANCES OF COUNSEL

*Scott N. Singer* of counsel *(Kenneth Sacks* and *John M. Downey* on the brief; *Sacks & Sacks,* attorneys), for appellant.

*Michael Majewski* of counsel *(Callahan, Schepp, Yuhas, Adams & Carfora* and *Diamond, Paino, Cardo, King & Peters,* attorneys), for respondents and third-party plaintiffs.

*E. Richard Rimmels, Jr.,* of counsel *(Michael A. Baranowicz* on the brief; *Montfort, Healy, McGuire & Salley,* attorneys), for third-party defendant-respondent.

## OPINION OF THE COURT

TOM, J.

The main issue raised in this appeal concerns whether plaintiff Patricia Lancaster adequately established her status as decedent's common-law wife and decedent's paternity of two children, allegedly born out of wedlock, for the purpose of commencing the underlying wrongful death and conscious pain and suffering action against defendants.

The decedent, Joseph Ralph Condo, an ironworker by trade, was critically injured on December 8, 1988 after falling 120 feet while engaged in the construction of "America's Tower", on Sixth Avenue and 46th Street in New York, New York. The accident occurred when decedent lost his balance as he was scaling a beam to affix a bolt, which resulted in his falling through the roof of an adjacent building. Mr. Condo was transported by ambulance to Bellevue Hospital, where he underwent surgery during the first 24 hours of admission. On December 16, 1988, eight days after the accident, Mr. Condo died in Bellevue's intensive care unit.

In 1989, plaintiff was appointed administratrix of decedent's estate and commenced the instant action against defendant 46 NYL Partners, as owner of the property, and defendant KM/ Turner, as construction manager of the work site where plaintiff sustained the fatal injuries. The complaint further names decedent's children Lisa Julian and Mary Lee Armstrong as distributees.

Patricia Lancaster was appointed administratrix of decedent's estate by a default order of the Probate Court of Brown County, Ohio, on February 17, 1989. Ms. Lancaster describes herself as Mr. Condo's surviving spouse and asserts that she met decedent in 1979 in Ripley, Ohio, and that, approximately 9 or 10 months later, decedent moved in with her. Decedent, however, because of the nature of his trade, was usually travelling to wherever work was available. For instance, Condo moved to Florida to work approximately three months after moving in with Lancaster, and he remained in Florida for two

or three years thereafter. Condo, during that time, did return to Ohio approximately every two weeks for two- or three-day visits.

Lancaster avers that in 1981, she and decedent made an agreement to stay together permanently and, from that point forward, considered themselves to be husband and wife. They opened a joint savings account at a local bank; they shared income and expenses; when decedent was away for a long period of time, he sent money home to Lancaster; and decedent listed the Ripley address in union documents and credit card applications filed in 1984 and 1988. On the other hand, Lancaster and Condo never had a ceremonial marriage performed; Lancaster always listed herself as single on tax returns and other applications; and the couple, when travelling, did not register in motels as married. Plaintiff visited decedent after he was admitted to the hospital.

The Probate Court of Brown County, Ohio, appointed Lancaster administratrix of decedent's estate, upon the affidavits of plaintiff, her mother and Linda Delormier, a friend, who declared that decedent and Lancaster held themselves out in the community to be married. Plaintiff subsequently received decedent's truck and a surviving spouse allowance of $5,000.

Lisa Julian was born in Massachusetts on August 1, 1972 and although her birth certificate does not list a father, her mother, Linda Sock, nee Julian (Sock), states in an affidavit that she dated decedent from August 1970 until October 1972, that she did not have sexual relations with any other man during that period and, thus, Lisa was decedent's child. Sock also maintains that from the time Lisa was three years old, decedent would regularly visit her, providing money for clothes and other expenses, and that he openly acknowledged her to be his daughter. Sock and Lisa both visited decedent in the hospital before he succumbed to his injuries and Lisa confirmed all of Sock's assertions in a separate affidavit. A judgment of the court of Massachusetts, entered on or about November 19, 1993, almost five years after decedent died, declared decedent to be the natural father of Lisa.

Mary Lee Armstrong was born on September 16, 1975 in Quebec, Canada; her father is not declared on her birth certificate. Mary Lee's mother, Arlene Margaret Armstrong (Armstrong), asserts that she resided with decedent in Quebec from early 1974 through 1979, that decedent was the only person with whom she had sexual relations during that period, and thus he was the father of Mary Lee. Armstrong also states that

decedent visited Mary Lee frequently and provided financial support, and that Mary Lee spent summers with decedent in Ripley, Ohio, from 1981 through 1988.

Armstrong further claims that decedent openly acknowledged Mary Lee as his daughter, and Mary Lee confirms Armstrong's assertions in an affidavit. Photographs of decedent with Mary Lee were also submitted. A judgment of the Superior Court of Quebec, entered on or about November 22, 1994, almost six years after decedent's death, declared decedent to be the natural father of Mary Lee.

In July 1995, after the parties had selected a jury, but before opening statements were made, defendants requested an *in limine* ruling on the effect of the orders of the Ohio, Massachusetts and Quebec courts as to the status of plaintiff and the two children, which the court informed the parties it was treating as a motion for summary judgment. The court subsequently dismissed the wrongful death claim, holding that there must be distributees in order to recover in such an action, and that the status of distributees must be fixed as of the decedent's death. The court further found that the orders of filiation of Lisa and Mary Lee were issued five and six years after Condo's death, respectively, and that the hearsay conversations with decedent, offered as evidence, were not sufficient to establish paternity by clear and convincing evidence and, in any event, were barred by the Dead Man's Statute (CPLR 4519).

With respect to Lancaster's status as decedent's common-law wife, the court found such status could not be established by a default order of an Ohio court after his death. The court pointed out that although decedent and plaintiff had held a joint savings account, they only lived together for two months, with decedent maintaining a separate residence and identifying himself as single in his employee records. Decedent also listed his brother as his closest relative in a credit application. In addition, Lancaster's W-4's, tax returns, employee pension and stock plans, and insurance applications all indicate that she was single. Furthermore, there were separate credit cards, no common property, and no spousal claim for Social Security, worker's compensation or disability by plaintiff. The court therefore concluded that plaintiff was not decedent's common-law wife, and thus, not a distributee.

In a separate order, the court dismissed the action for conscious pain and suffering for the same reasons set forth in its order dismissing the wrongful death action. Judgment was

entered thereafter on the two orders dismissing plaintiff's entire action. Plaintiff appeals and we now reverse.

A cause of action for conscious pain and suffering is separate and distinct from one for wrongful death and is distinguished by whether the damages have been sustained by the distributees or the decedent (*see, Matter of Ruiz v New York City Health & Hosps. Corp.*, 165 AD2d 75; *Dunefsky v Montefiore Hosp. Med. Ctr.*, 162 AD2d 300; *Chattergoon v New York City Hous. Auth.*, 161 AD2d 141, *affd* 78 NY2d 958).

In *Ratka v St. Francis Hosp.* (44 NY2d 604, 609), the Court of Appeals expanded on the distinction and stated: "A personal injury action is for conscious pain and suffering of the decedent prior to his death. This contrasts with a wrongful death action for pecuniary injuries resulting from decedent's death and certain expenses. *The recovery for conscious pain and suffering accrues to the decedent's estate, whereas the damages for wrongful death are for the benefit of the decedent's 'distributees' who have suffered 'pecuniary injury'* * * *. The claims are thus predicated on essentially different theories of loss which accrue to different parties." (Emphasis added.)

In light of the foregoing, it was error for the IAS Court to dismiss the cause of action for conscious pain and suffering on the ground that there were no distributees since such claim accrues to decedent's estate and not to decedent's distributees. Furthermore, decedent indeed was survived by several distributees. Without taking into consideration Lancaster, Mary Lee and Lisa, whose status the defendants dispute, decedent was survived by two brothers, an aunt and a cousin. To the extent that Lancaster may be an improper administratrix, as defendants maintain, then one of the distributees may contest the appointment before the Ohio Probate Court and seek to have themselves, or another, substituted. As yet, none have done so.[1]

It was also error for the IAS Court to dismiss the wrongful death claims brought on behalf of decedent's alleged issue. New York law originally provided that a child born out of wedlock was precluded from recovering damages for the wrongful death of his or her father. However, the United States Supreme Court, in *Levy v Louisiana* (391 US 68, 72), held that: "[l]egitimacy or illegitimacy of birth has no relation to the

---

1. Even if this matter were dismissed on the ground that plaintiff was not a proper administratrix, the estate would still be able to commence a new action, by a duly appointed administrator, within six months of the service of this Court's order *(see,* CPLR 205 [a]; *Bernardez v City of New York,* 100 AD2d 798).

nature of the wrong allegedly inflicted on the mother * * * [and] [w]e conclude that it is invidious to discriminate against [the children] when no action, conduct, or demeanor of theirs is possibly relevant to the harm that was done [to] the mother," thereby violating the Equal Protection Clause of the Fourteenth Amendment. That holding was extended to invalidate the New York prohibition against illegitimate children attempting to recover for the wrongful death of their fathers (*Matter of Ortiz*, 60 Misc 2d 756; *see also*, *Holden v Alexander*, 39 AD2d 476).

As a result, EPTL 5-4.5 was enacted which, at the time of decedent's death, provided that for the purposes of wrongful death, "a child born out of wedlock is the distributee of his father". In *Grivas v Port Auth.* (227 AD2d 105), this Court held that pursuant to the provisions of EPTL 4-1.2 (a) (2) (A), a *posthumous* order of filiation declaring the decedent to be the child's father is insufficient, by itself, to establish the child's status as a qualified distributee entitled to have a wrongful death action brought on her behalf. EPTL 4-1.2 (a) (2), however, sets forth other circumstances under which nonmarital children can inherit from their fathers, including where "paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own" (EPTL 4-1.2 [a] [2] [C]).

In the matter before us, the evidence presented reveals that: Lisa and Mary Lee's mothers both swore in affidavits that decedent was the only person who could have been their respective daughter's father due to the nature of the relationships when the children were conceived; each of the daughters maintained that decedent acknowledged them openly and notoriously as his own on numerous occasions; decedent listed Mary Lee as his daughter and the beneficiary of his union pension, annuity and welfare funds in December 1984, and she eventually received benefits from those funds; and the children and their mothers testified that decedent spent time with them and supported them over the years. In contrast, neither birth certificate lists decedent as the father, even though both mothers maintain that they knew him to be the father at the time of birth; the fact that decedent visited Lisa and Mary Lee does not, in itself, prove he was their father; and there is absolutely no documentary evidence in the record to support the self-interested testimony of Lisa, Mary Lee and their mothers that decedent supported them. Accordingly, we find that the evi-

dence at bar clearly establishes triable issues of fact as to their status as distributees.

We reject plaintiff's argument that the filiation orders of Massachusetts and Quebec should be deemed determinative on the issue of paternity under the principles of either full faith and credit or comity. As discussed above, the two posthumous judgments by themselves alone do not satisfy the EPTL and are insufficient to establish the children as distributees of the decedent, although the orders, along with other factors, are sufficient to create issues of fact as to paternity (*Grivas v Port Auth., supra*).

As stated by the United States Supreme Court in *Pacific Ins. Co. v Commission* (306 US 493, 502), "there are some limitations upon the extent to which a state may be required by the full faith and credit clause to enforce even the judgment of another state in contravention of its own statutes or policy" (*see also, Hood v McGehee*, 237 US 611). Here, we note that the filiation orders, in addition to not complying with the provisions of EPTL 4-1.2, were sought for the sole purpose of allowing Lisa and Mary Lee to share in the proceeds of the current action. Decedent, having died many years before the judgments were issued, did not have a chance to appear, and his blood relatives were not given notice and an opportunity to contest the judgments. In light of these considerations, the Massachusetts judgment is not entitled to full faith and credit. Likewise, the principle of comity does not render the Quebec order determinative as to Mary Lee.

We agree with plaintiff, however, that the pedigree testimony of the daughters, in which they stated that decedent openly and notoriously acknowledged them as his own on numerous occasions, is admissible as an established exception to the hearsay rule (*Washington v Bank for Sav.*, 171 NY 166; *Eisenlord v Clum*, 126 NY 552). Further, defendants' reliance on the Dead Man's Statute, adopted by the IAS Court, is misplaced because defendants, as parties who are not interested in the outcome of decedent's estate, cannot invoke the protection afforded by the statute (CPLR 4519; *Endervelt v Slade*, 214 AD2d 456; *Sutter v Seydel*, 70 AD2d 770, *lv denied* 48 NY2d 605). In any event, since the IAS Court was treating defendants' motion as one for summary judgment, it erred in finding that the children's testimony was barred by the Dead Man's Statute: such evidence, which may be excludable at trial, can be considered to defeat a motion for summary judgment (*Phillips v Kantor & Co.*, 31 NY2d 307; *Endervelt v Slade, supra*).

■ Lastly, plaintiff asserts that the Ohio probate proceeding, and the evidence submitted below, was sufficient to establish that she was decedent's common-law wife and, therefore, that she was a qualified distributee. We disagree.

Although New York itself does not recognize common-law marriages, such a union will be recognized as valid here if it was validly contracted in a sister State (*Matter of Mott v Duncan Petroleum Trans.*, 51 NY2d 289; *Matter of Watts*, 31 NY2d 491). The law to be applied in determining the validity of such an out-of-State marriage is the law of the State in which the marriage purportedly occurred (*Matter of Mott v Duncan Petroleum Trans., supra; Matter of Gates*, 189 AD2d 427, *lv dismissed in part and denied in part* 82 NY2d 679).

The Ohio orders are not determinative of the issue insofar as they were not adjudications of a common-law marriage but, rather, merely appointed Lancaster as administratrix of decedent's estate. In fact, the matter of plaintiff's status actually was not litigated and the appointment was granted on default. In addition, plaintiff misrepresented in the petition that she was the only surviving spouse, next of kin, legatee or devisee of decedent. Despite the fact that decedent was survived by blood relatives and, purportedly, by five children born out of wedlock,[2] plaintiff listed only herself as surviving decedent in her petition to the Probate Court in Ohio. Thus, there exists no judgment of common-law marriage which can be given effect under the principles of full faith and credit.

Nevertheless, plaintiff maintains that she proffered sufficient proof to establish the existence of a common-law marriage. Under the law of Ohio, the situs of the purported marriage, there must be a meeting of the minds to enter into a contract to presently take each other as husband and wife, followed by cohabitation as a married couple, and being so treated and reputed in the community and circle in which they move. The fundamental requirement necessary to establish the existence of a common-law marriage, which is not favored in Ohio, is the agreement to marry *in praesenti*. Further, each of the foregoing elements must be established by clear and convincing evidence (*Nestor v Nestor*, 15 Ohio St 3d 143, 472 NE2d 1091; *Chlieb v Heckler*, 777 F2d 842).

In the matter at bar, under the foregoing standard, issues of fact exist as to whether there was a common-law marriage be-

---

2. The claims of three of decedent's other children, all boys, have been withdrawn insofar as it appears that they were adopted by their mother's husband.

tween decedent and plaintiff. Defendants stress that decedent and plaintiff had cohabited only for two or three months. However, the record clearly demonstrates that decedent travelled wherever he found work available in his trade and that he returned home on weekends and holidays. Furthermore, decedent listed the Ohio residence as his address on a credit card application in 1988 and on a union designation of beneficiary form in 1984 and it is undisputed that decedent opened a joint savings account with plaintiff at a local Ohio bank. The fact that plaintiff never changed her last name is of no moment insofar as such a practice is common among married women.

In addition, although plaintiff identified herself as single on tax returns and other similar documents, she testified that she believed she had to do so, since she was not formally married. In any event, this is not dispositive, insofar as Ohio law does not require parties to disseminate information of their marriage to all of society in general, but only to those with whom they normally come into contact (*Nestor v Nestor*, 15 Ohio St 3d, *supra*, at 146, 472 NE2d, *supra*, at 1095). Pursuant to affidavits filed in the Ohio Probate Court, plaintiff's mother and friend testified that decedent and plaintiff held themselves out to be married.

Plaintiff concedes that she and decedent discussed having a ceremonial marriage, but never actually had one performed; that they had a deposit on an engagement ring, but never actually purchased it; and that neither of the two named the other as beneficiary on any of their respective policies and funds. In sum, there should be a trial to determine whether plaintiff and decedent had, in fact, entered into a common-law marriage under Ohio law or merely had agreed to marry eventually.

Accordingly, the judgment of the Supreme Court, New York County (Harold Tompkins, J.), which was entered on August 1, 1995, dismissing plaintiff's action in its entirety, is reversed, on the law and the facts, without costs, the complaint is reinstated and the matter is directed to trial in accordance herewith. The appeals from the orders, same court and Justice, which were entered on or about July 17, 1995, dismissing the causes of action for wrongful death and conscious pain and suffering, are dismissed, without costs, as superseded by the appeal from the judgment.

SULLIVAN, J. P., ELLERIN, ROSS and MAZZARELLI, JJ., concur.

Judgment, Supreme Court, New York County, entered August 1, 1995, reversed, on the law and the facts, without costs, the complaint reinstated and the matter directed to trial,

and the appeals from two orders, same court and Justice, entered on or about July 17, 1995, dismissed, without costs, as superseded by the appeal from the judgment.