*743 OPINION OF THE COURT
Lee L. Holzman, J.
In this proceeding to judicially settle the account of the Public Administrator, the five objectants, alleged first cousins of the decedent, assert that they are the decedent’s only distributees and that the estate should be distributed to them pursuant to EPTL 4-1.1 (a) (6). The objectants are required to satisfy the following three-pronged test to establish their status as distributees: (1) they must exclude the possibility that the decedent was survived by any person who would be entitled to inherit from the decedent to the exclusion of first cousins (that the decedent was not survived by a spouse or any blood relative in a closer degree of kinship than themselves, making such person or persons, rather than cousins, the decedent’s distributees pursuant to EPTL 4-1.1 [a] [l]-[5]); (2) they must prove that they are, in fact, the decedent’s cousins; and (3) they must limit the class of possible distributees, i.e., establish the maximum number of people who might have survived the decedent who fall within the same class of distributees as themselves.
The proof adduced at the kinship hearing fulfilled the second and third prongs of the above test in that the court was satisfied that the objectants are first cousins of the decedent and that the decedent was only survived by two maternal first cousins and three paternal first cousins. However, the proof also indicated that the decedent’s father, Eldon Talmage Morrow (Eldon), was married three times and divorced from his first two spouses. The decedent was the only child of Eldon and his first wife, Mary (Mollie) Agnes Duncan. Eldon next married Audrey Douglas and they had the following three children: Eldon, Norman and Sally. There was testimony to the effect that Eldon’s second wife remarried and that the three children from her prior marriage to Eldon, the decedent’s siblings of the half blood, were adopted in New Hampshire by her new husband, George Preston Frost.
The decedent’s above three siblings would clearly be his only distributees, to the exclusion of first cousins, under EPTL 4-1.1 (a) (5) had they not been adopted. The fact that they are siblings of the half blood rather than of the whole blood does not in any way affect their right to inherit under New York law (EPTL 4-1.1 [b]). Consequently, the following questions of law are presented: (1) Does New York or New Hampshire law govern with regard to whether the children have the status of *744 being “adopted” children? (2) Does New York or New Hampshire law govern with regard to the rights of the “adopted out” siblings of the half blood to inherit? and (3) Do the “adopted out” siblings have the right to inherit from the decedent under the applicable law? The answers to the three questions are: (1) New Hampshire, (2) New York, and (3) Yes, pursuant to Domestic Relations Law § 117 (1) (e).
Even though the question of whether children have been lawfully adopted, or their status as adopted children, is governed by the law of the situs of the adoption, their “ ‘right to take property by will or inheritance’ ” from a New York domiciliary is adjudicated “in the same light as though they had been duly adopted under the laws of New York” (Matter of Leask, 197 NY 193, 196; Matter of Chase, 127 AD2d 415, 416-417; Matter of D’Angelo, 139 Misc 2d 5, 8; see also EPTL 3-5.1 Ob] [2]). In New York, under most circumstances, “[t]he rights of an adoptive child to inheritance * * * from and through his natural parents shall terminate upon the making of the order of adoption” (Domestic Relations Law § 117 [1] [b]). One exception to the general rule is set forth in Domestic Relations Law § 117 (1) (d), enacted in 1966, which provides that, in the case of a stepparent adoption, the adoptee only inherits from and through the natural parent who married the stepparent and not from or through the other natural parent (see Matter of Chase, supra, at 416, n). However, this exception was expanded by the 1987 amendment set forth in Domestic Relations Law § 117 (1) (e). Subdivision (1) (e) expressly overrides any inconsistent provision in subdivision (1) (a), (b) and (d) and provides that adopted children may inherit from and through their natural parents as to estates of persons dying after August 31, 1987, provided that the decedent is the adoptive child’s natural grandparent or is a descendant of such grandparent and that an adoptive parent is married to the child’s natural parent, or is the child’s natural grandparent.
Thus, even though the piecemeal amendment of Domestic Relations Law § 117 to cure the problem de jour has led to seemingly conflicting subdivisions, the provisions of subdivision (1) (e) prevail to the extent that there are any inconsistencies and provide that, in a stepparent adoption, the adoptive child inherits from and through both biological parents, including the biological parent that has not married the stepparent or consented to the stepparent adoption (Matter of Seaman, 78 NY2d 451). Here, the proof presented raises the distinct possibility that the decedent was survived by three siblings of the *745 half blood. Furthermore, even though they were adopted by their mother’s second husband, they would still be considered the decedent’s siblings for the purposes of inheritance under New York law because the decedent is a descendant (grandson) of the adoptive children’s natural grandparents and the adoptive parent was married to the natural mother (Domestic Relations Law § 117 [1] [e]; Matter of Seaman, supra).
Accordingly, the objections of the cousins are dismissed. The Public Administrator is directed to retain the funds for a period of 90 days from the date of this decision and order to give the siblings of the half blood an opportunity to establish their entitlement to the estate. In the event that no such application is made, a decree should be settled directing that the net distributable estate be deposited with the Commissioner of Finance of the City of New York for the benefit of those who may thereafter establish their entitlement thereto.