*353 OPINION OF THE COURT
Eve Preminger, S.
In creating trusts for the benefit of the issue of his eight children, the settlor required that “adoptions shall not be recognized.” One of the settlor’s daughters (hereinafter K. Doe)[1] and her husband became the parents of fraternal twins by virtue of a surrogacy arrangement, using an anonymous donor egg, fertilized in vitro with the sperm of K. Doe’s husband, and carried to term by an unrelated surrogate mother. Petitioners, successor trustees, bring this construction proceeding to determine whether the settlor’s exclusion of “adoptions” excludes these children as beneficiaries.
The eight identical inter vivos trust instruments, created by the settlor, an attorney, in 1959, required that the net income of each trust be paid to such charitable organizations as appointed by each child until September 1, 1979, after which date the net income of each trust was to be paid to the “issue” or “descendants” of each child. As of December 31, 2001, the issue of five of the settlor’s eight children were receiving income from the trusts. The income from the remaining three trusts was being distributed in equal shares per capita to the 14 then-living grandchildren of the settlor as specified by the trust instruments.
As to the twins’ birth, K. Doe and her husband arranged for a genetically unrelated surrogate mother in the state of California to be impregnated with the eggs of an anonymous donor fertilized in vitro by K. Doe’s husband’s sperm. After the twins’ birth, with consent of the surrogate mother, K. Doe and her husband obtained a judgment of parental relationship from the Superior Court of California to establish them as the twins’ sole legal parents.
If the twins are not excluded by the terms of the trust prohibiting recognition of adopted children, they are: (1) income beneficiaries and presumptive remaindermen of the trust created for benefit of the issue of their mother, K. Doe; (2) eligible to receive their per capita share of the income of trusts for two of the settlor’s issue who currently have no issue; (3) permissible beneficiaries of the exercise of the lifetime power of appointment reserved to the trustees to make discretionary principal distributions to the settlor’s grandchildren; and (4) permissible beneficiaries of the testamentary powers of appoint *354 ment given to K. Doe and her seven siblings over their respective remainders.
The court has appointed a guardian ad litem for the twins, who argues they should be included, as well as one for the infant grandchildren of the settlor whose interests in the trusts will be affected by this decision, who argues that they should not.
In a construction proceeding, the intent of the settlor controls. (Matter of Balsam, 58 Misc 2d 672, 677 [1968]; see Matter of Buechner, 226 NY 440, 443 [1919].) The reproductive technologies involved in this case — in vitro fertilization and gestational surrogacy — were established in the 1970s, well after these trusts were settled. It is unlikely that the settlor’s views of these methods of reproduction can be discovered. Even if the court were to consider the trusts ambiguous and allow extrinsic evidence on this question, the petitioning trustees candidly state that they know of none. This construction question is thus confined to the language employed in the trusts.
Looking at that language, one interpretation of the settlor’s exclusion of “adoptions” is that he intended to exclude all non-blood relations. However, in examining, as the court must, the document as a whole (see Matter of Fabbri, 2 NY2d 236, 240 [1957]), it is clear that was not his intent. The settlor provided a means for spouses, nonblood relatives, to take under the trusts. Upon the death of a child, the trustees are directed to distribute any remaining trust principal to the settlor’s then-living issue, other than the estate of the child, and the spouse of such issue in such proportions as the child may designate by will. In default of the child’s exercise of the testamentary power of appointment, the remainder is to be distributed to the issue of the child, or in default of such issue, to the settlor’s issue per stirpes. Although the possibility of a nonblood relative’s taking a portion of the remainder depends on an affirmative exercise of the power of appointment by a child, the settlor contemplated that his nonblood relatives might take a portion of the trust remainder. Similarly, certain trustees are permitted in their discretion to appoint principal to “grandchildren and more remote issue of the Settlor and spouses of such grandchildren and more remote issue.” Thus, under the trusts, there is the possibility of a nonblood relation being a beneficiary.
This is the main language in the trusts that bears on this question, and nothing else suggests that the court should extend “adoptions” to include the reproductive technologies at issue in this case. When the settlor excluded “adoptions,” it cannot be *355 said that he intended to exclude all means of assisted reproduction; such means of assisted reproduction were not then in existence, and no language in the trusts anticipates technologies relating to birth that may be developed in the future.
With some evidence in the trust documents that the settlor did not intend to exclude all nonblood relations, the court turns to the question of whether the California judgment should be considered an adoption, and if not, whether New York should afford it full faith and credit.
Under California law, a judgment of parental relationship is entirely distinct from an adoption proceeding, and the two are governed by different divisions of the California Family Code. The judgment of parental relationship obtained by K. Doe and her spouse was entered in a proceeding brought under sections 7630 and 7650 of division 12 of the California Family Code, which govern the establishment of parental relationships, not adoptions. The judgment declared K. Doe and her husband to be “the sole and legal parents” of the twins and the surrogate mother and her husband to be “strangers in blood” to the twins. The judgment ordered amendment of the twins’ birth certificates to list K. Doe as mother and her husband as father. In contrast, California adoptions are governed by division 13 of the California Family Code. California treats these two methods of establishing parental rights as distinct in nature. A California gestational surrogacy arrangement, where, as here, the surrogate mother is implanted with an egg fertilized in vitro, is not subject to the adoption statutes (Johnson v Calvert, 5 Cal 4th 84, 96, 851 P2d 776, 783-784 [1993]).
It is clear that in California the twins were not adopted, and recognizing this result in New York is appropriate. Surrogacy is not the functional equivalent of adoption. For example, in gestational surrogacies, as here — where the birth mother is implanted with a fertilized ovum genetically unrelated to her— the basic question of who should be considered the natural mother must be answered in light of the advanced technologies that permit such a procedure. In Johnson, California developed an analysis that has become known as the intent test: those who intended to be parents, absent other compelling circumstances, should be considered the parents. Applying that test, the Johnson court declared the genetic mother, who intended from the beginning to be the mother, instead of the gestational surrogate mother, to be the natural mother (Johnson, 5 Cal 4th at 93-94, 851 P2d at 781-782).
*356 New York also has a separate article, article 8 (§§ 120-124) of the Domestic Relations Law, dealing with surrogate parenting. Unlike California, it forbids recognition of surrogate parenting contracts, and considers them void and unenforceable (Domestic Relations Law § 122). Nonetheless, New York courts entertain petitions for declarations of maternity, and do not require parents to go through an adoption proceeding in cases of in vitro fertilization and gestational surrogacy arrangements (see e.g. Arredondo v Nodelman, 163 Misc 2d 757 [1994] [decided before enactment of article 8]; see Matter of Andres A. v Judith N., 156 Misc 2d 65 [1992] [related proceeding]), and apply the intent test to determine who the “natural mother” is in such an arrangement in the context of a divorce and custody dispute (McDonald v McDonald, 196 AD2d 7 [1994] [decided after enactment of article 8]; see also Kass v Kass, 91 NY2d 554 [1998]). While the practice commentaries to Domestic Relations Law § 122 state that surrogacy arrangements are “specialized adoption agreements” (Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 122, at 321 [1999]), adoption need not follow a surrogate parenting arrangement, as it does not in California (Johnson, 5 Cal 4th at 96, 851 P2d at 783-784) and did not in this case.
Finally, no reasoning justifies a denial of full faith and credit to the California judgment. Where a judgment of a sister state is issued with jurisdiction of all parties, New York must afford it full faith and credit (US Const, art IV § 1; 28 USC §§ 1738, 1738A, 1738B; see e.g Matter of Michael H. v Carole S.D., 198 AD2d 414, 415 [1993] [full faith given to California judgment regarding paternity and visitation rights]; Matter of D’Angelo, 139 Misc 2d 5, 10 [1988] [full faith given to California adoption decree]; see also Hampton v M’Connel, 3 Wheat [16 US] 234, 235 [1818]; Domestic Relations Law § 77-b).[2] Although New York forbids enforcement of surrogacy contracts, the enforcement of the contract is not at issue here. More importantly, the Legislature did not punish or prejudice the rights of children born from such arrangements. Instead, the statutory scheme explicitly contemplates full and fair proceedings to determine “parental rights, status or obligations” (Domestic Relations Law § 124), *357 notwithstanding the surrogate parenting contract. Although for different reasons, a New York court could have reached the same conclusions as to who the twins’ parents are as the California court did, and full faith and credit cannot be denied the California judgment on grounds of some countervailing New York public policy (see Baker v General Motors Corp., 522 US 222, 233 [19983; cf. Matter of May, 305 NY 486 [1953]).
Accordingly, the court holds that the twins are not excluded from the benefits of the John Doe trusts by virtue of the adoption exclusion.

. This case has been sealed to protect the identity of the infants.

. In limited circumstances, not present here, New York courts denied full faith and credit to a sister state judgment regarding a party’s family status (see e.g. Matter of Luna v Dobson, 97 NY2d 178 [2001] [Connecticut paternity proceedings not dismissed on merits through no fault of petitioner]; Lancaster v 46 NYL Partners, 228 AD2d 133, 141 [1996] [Ohio decision appointing administratrix, an alleged common-law spouse, granted on default]).